FILED
IN CLERK'S OFFICE

2025 DEC -1  PM 1:49

U.S.
DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---------------------------------------------------------

ANGELA BOLTON,
JF by and through his mother ANGELA BOLTON,
ANNE PARENT
Plaintiffs,

v.

DEPARTMENT OF CHILDREN AND FAMILIES
COMMISSIONER LINDA SPEARS
KRISTIE GIANCOLA,
PAULINA BAZILE,
MELISSA DAVIDSON,
DARLENE TONUCCI,
ROSALIE KERN,
ALLISON PESSOA,
MARY CANTIN,
JOSEPH RUCKER
ATTORNEY DAVID TIBBETTS
ATTORNEY CHRISTINE DOHERTY
D'ANDRE FERNANDEZ, Board of Overseers
ATTORNEY JENNA FERNANDES
ATTORNEY CAROL FRISOLI
JOHN DOES 1–10,
Defendants,

---------------------------------------------------------

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1. Plaintiffs' Angela Bolton, JF by and thru his mother Angela Bolton, and Anne Parent file this Civil Rights action before this Court under 42 U.S.C. §1983. The First, Fourth, and Fourteenth Amendments, and Massachusetts law, arising from the unconstitutional seizure, retaliatory removal, fabrication of evidence, denial of due process, and interference with familial integrity perpetrated by the Massachusetts Department of

Children and Families ("DCF"), its employees, supervisors, attorneys, and related officials.

2. On November 27, 2022, an altercation between Plaintiff Angela Bolton and her boyfriend Colin Traver occurred. Ms. Bolton's son, JF, was present.

3. Mr. Traver was arrested and later released. Ms. Bolton picked Mr. Traver up, upon arriving at the police station there were emergency response workers from the Department of Children and Families, they spoke with both Ms. Bolton and Mr. Traver and explained they just needed to view and speak with JF. There were three response workers that followed Ms. Bolton and Mr. Traver to their residence. They did speak with and view JF; they even took pictures of him. They noted no concerns with the safety of the home or JF.

4. The following day on November 28th, 2022, Plaintiff spoke with ongoing social worker Kristie Giancola. During this phone call Ms. Bolton stated, "she found it hard to believe that she was judging her on her parenting skills when she comes to our house high as a kite." Ms. Giancola did not like this and hung up the phone.

5. After that statement, Ms. Giancola became retaliatory and called the Attleboro Police Department to conduct a wellness check on Ms. Bolton. Ms. Giancola lied and fabricated her reasoning to the police as she stated, "JF was not in school." The police arrived at Ms. Boltons residence and spoke with both Ms. Bolton and JF, both noted JF was most certainly at school he was a couple minutes late. The officer noted, "Mother was not intoxicated and felt safe leaving the child in care of his mother and cleared the scene."

6. Later that same evening, between the hours of 7:00 and 8:00 P.M Ms. Giancola arrived at the residence with the Attleboro Police Department to do an emergency removal of JF. Ms. Bolton and Mr. Traver asserted their Constitutionals Rights and stated to Ms. Giancola they have no authority to take JF. Mr. Traver called the State Police to notify them. Within minutes the police and case worker had left.

7. Ms. Giancola then went back to the police station and asked if Ms. Bolton would be charged with kidnapping.? The Police said, "you and I both know that would never happen." Ms. Giancola became upset with this and badgered the lieutenant to get the chief on the phone with the area director. The chief said, "no matter how long you stay here we will not be going back to the residence tonight."

8. Police officers and emergency response workers had already determined JF was safe, not at risk, and that no emergency existed.
DCF ignored their findings.

9. When the Attleboro Police Department refused to participate in an unlawful removal, DCF employees badgered, pressured, and attempted to coerce officers into helping them seize JF without cause.

10. The next morning, Ms. Giancola filed a false 29C affidavit, knowingly misrepresenting facts including school attendance, drinking, and the presence of Mr. Traver in the home.

11. Plaintiff Angela's statutorily required 72-hour hearing was unlawfully delayed and not concluded until more than 880 hours passed, violating her procedural due process rights.

12. During the removal period, Angela and JF were granted only one hour per week of supervised visitation in a small room with baby toys — an act of retaliation and punishment disconnected from any legitimate safety concern.

13. JF received no counseling, despite the emotional harm caused by DCF's misconduct. Angela and kinship caregiver Anne Parent were blocked from securing counseling for him.

14. Angela's court-appointed attorney, Mr. Tibbetts refused to file critical motions, disregarded her legal directives, and collaborated with DCF's position. JF's attorney, Mrs. Doherty, similarly failed to advocate for him. Ms. Bolton specifically cited the Walt case and even drafted her own motion that was presented to Mr. Tibbetts.

15. Ms. Bolton sent over 32 pages of text messages from her to attorney Tibbetts, to the Board of Overseers. Specifically, Mr. Fernandez. Showing the lack of filing motions when requested, the clear evidence of deprivation of familiar integrity, and lack of reunification. The Board of Overseers, through official Mr. Fernandez, ignored clear evidence of attorney misconduct and ratified constitutional violations.

16. In August 2025, the Massachusetts Superior Court vacated DCF's entire neglect determination, confirming that the removal was improper and unsupported.

17. As a result of Defendants' actions, Angela, JF, and Anne suffered:
    a. Loss of familial relationship
    b. Emotional trauma
    c. Interference with custody
    d. Reputational harm
    e. Distress, anxiety, and psychological injury
    f. Financial burden
    g. Loss of educational and emotional stability

18. Plaintiffs now seek compensatory damages, punitive damages against individual defendants, declaratory and injunctive relief, attorney fees, and all other appropriate relief.

## JURISDICTION AND VENUE

19. This action arises under the Constitution and laws of the United States, including 42 U.S.C. §1983, and this Court has jurisdiction pursuant to 28 U.S.C.

20. Supplemental jurisdiction over state-law claims is conferred by 28 U.S.C.

21. Venue is proper in this District

22. The events giving rise to this action occurred within the District of Massachusetts

23. Defendants reside or are employed within this District

24. DCF is headquartered within this District

## PLAINTIFFS

25. Plaintiff Angela Bolton is an adult resident of Attleboro, Massachusetts, residing at 45 Birch Street, Unit 11, Attleboro, MA 02703.

26. Angela is the biological mother of Plaintiff JF Flanagan.

27. Angela was the custodial parent at all relevant times and is the primary plaintiff, having suffered direct violations

28. First Amendment rights

29. Fourth Amendment rights

30. Fourteenth Amendment rights (substantive and procedural due process)

31. State statutory rights

32. Angela brings this action on her own behalf for the severe constitutional, emotional, and financial injuries she suffered.

33. Plaintiff JF Flanagan, born August 9, 2008, is a minor who resides in Massachusetts.

34. At the time of the unlawful seizure, JF was 14 years old.

35. JF suffered significant emotional, psychological, and familial harm as a result of Defendants' unconstitutional actions.

36. Illegal seizure

37. Loss of parental relationship

38. Denial of counseling

39. Forced separation for over eight months

40. Trauma resulting from state action

41. He appears in this action through his mother and next friend, Angela Bolton, in accordance with the Federal Rules of Civil Procedure.

42. Plaintiff Anne Parent is an adult resident of Massachusetts and the grandmother of JF.

43. At DCF's direction and under coercive conditions, Anne became JF's "kinship foster placement."

44. DCF misrepresented requirements to Anne, prevented her from obtaining counseling for JF, forced her into compliance with foster mandates, and placed her under severe emotional and practical stress.

45. Anne suffered her own independent injuries.

46. Interference with familial integrity

47. Emotional distress

48. Loss of autonomy and decision-making as kin

49. Anne suffered her own independent injuries.

50. Interference with kinship and familial integrity

51. Emotional distress caused by DCF's coercive conduct

52. Being forced into the role of a foster parent under false pretenses

53. Being denied authority to secure essential counseling or services for JF

54. Bearing the emotional and physical strain of caring for a traumatized child removed unlawfully

55. Loss of stability and disruption of her own life due to state misconduct

56. Anne brings her claims under federal law (42 U.S.C. §1983), and under Massachusetts law for negligence, gross negligence, emotional distress, interference with familial relations, and violations of the Massachusetts Civil Rights Act.

## DEFENDANTS

57. Department of Children and Families as an agency for failure to supervise, train, and follow its own policies and procedures.

58. Linda Spears Commissioner at the time and is responsible for DCF policies, supervision, training, and enforcement. Defendant Spears was contacted by Plaintiff Angela Bolton and disregarded the voicemail, and knowingly and intentionally allowed these deceptive acts to continue. Spears is sued in her official capacity for injunctive and declaratory relief under Monell and state law.

59. Defendant Kristie Giancola is a DCF caseworker employed at the time of all relevant events by the Massachusetts Department of Children and Families, Taunton/Attleboro Area Office.

60. Ms. Giancola acted under color of state law and was the primary actor responsible for the unlawful removal, retaliation, fabrication of evidence, and interference with visitation.

61. Her actions give rise to liability under federal and state law.

62. Defendant Paulina Bazile was the DCF supervisor overseeing Ms. Giancola.

63. Mrs. Bazile knowingly approved, ratified, and failed to correct the unlawful actions, including the fabricated 29C affidavit and the unconstitutional removal.

64. She acted under color of state law and is sued in her individual and official capacities.

65. Defendant Melissa Davidson was employed by DCF in a supervisory decision-making capacity and contributed to and failed to correct the misconduct. Davidson was involved in the processing, review, or oversight of the removal and hearing procedures and contributed to the violations.

66. Defendant Darlene Tonucci was involved in the processing, review, or oversight of the removal and hearing procedures and contributed to the violations.

67. Defendant Rosalie Kern is a DCF employee who was involved in oversight, case review, or decision-making, and whose acts and omissions contributed to plaintiffs' injuries. Kern was involved in the processing, review, or oversight of the removal and hearing procedures and contributed to the violations.

68. Defendant Allison Pessoa acted under the color of law in reviewing, processing, and affirming actions related to the 29C filing, visitation restrictions, and reunification delays. Pessoa was involved in the processing, review, or oversight of the removal and hearing procedures and contributed to the violations.

69. Defendant Mary Cantin is a DCF employee involved in supervising, authorizing, and ratifying the challenged conduct. Cantin was involved in the processing, review, or oversight of the removal and hearing procedures and contributed to the violations.

70. Defendant Joseph Rucker the Area Director Taunton Office. Rucker was involved in decision-making surrounding the removal, participated in attempts to coerce the Attleboro Police Department, and failed to stop the unlawful actions of subordinates. Rucker was involved in the processing, review, or oversight of the removal and hearing procedures and contributed to the violations.

71. Defendants JOHN DOES 1-10 yet to be named from the Department of Children and Families, and any other relevant necessary parties that may not be known at the time of this filing.

72. Defendant Attorney David Tibbetts was the court-appointed attorney for Plaintiff Angela Bolton in the juvenile proceeding. Tibbetts acted under color of state law by conspiring with DCF, refusing to file required motions, failing to advocate for his client, and participating in the denial of due process. His conduct renders him liable under §1983 and state law negligence/malpractice theories as incorporated into this action.

73. Defendant Attorney Christine Doherty was the court-appointed attorney for JF.

74. Doherty failed to advocate for Jayden's rights, refused to request necessary services, and aided DCF by allowing unconstitutional restrictions and delays to continue.

75. Defendant Mr. Fernandez acted under color of state authority within the Massachusetts Board of Bar Overseers. Despite receiving detailed evidence of attorney misconduct, he refused to investigate or act, thereby ratifying and contributing to the deprivation of plaintiffs' rights.

76. Defendant Department of Children and Families is a state agency headquartered in Boston. DCF is liable for Monell official-capacity claims, declaratory relief, and injunctive relief.

77. John Does 1 through 10 are unknown DCF employees, caseworkers, supervisors, and state officials whose identities are presently unknown but who participated in the constitutional and statutory violations described herein. They will be substituted once they are identified.

## STATEMENT OF FACTS

78. The events giving rise to this action began on November 27, 2022, when a domestic incident occurred between Plaintiff Angela Bolton and her boyfriend, Colin. No police were called by Angela. Instead, Colin went to the police station voluntarily.

79. The Attleboro Police Department responded to Angela's residence, investigated, and later arrested Colin based on his own report. Angela bailed him out that same night. Ms. Bolton spoke with the emergency response workers. Noting that neither Ms. Bolton nor Mr. Traver were intoxicated at the time. They told Ms. Bolton they just need to come to the home to do a safety check. Shortly thereafter, three emergency response caseworkers

from the Massachusetts Department of Children and Families followed Ms. Bolton and Mr. Traver to the residence.

80. The emergency response workers inspected the home, observed Plaintiff JF, took photographs, and found no safety concerns.

81. They informed Angela that the only requirement was that Colin leave the home for the night. No evidence of abuse, neglect, or danger existed. Workers stated Mr. Traver had to leave for the night in which he did.

82. MS. Bolton complied fully.

83. The following morning, November 28, 2022, while Angela was at court supporting Colin's proceedings, she missed a call from DCF worker Kristie Giancola

84. Angela returned the call a short time later.

85. During the conversation, Angela stated to Ms. Giancola that she found it concerning that, "Ms. Gianola is judging her on her parenting skills when she comes to the house high as a kite."

86. This statement — protected First Amendment speech — visibly angered Giancola.

87. Ms. Giancola abruptly hung up the phone.

88. Later that afternoon, around 4:00 p.m., the Attleboro Police arrived at Angela's home The police informed Angela that DCF worker Kristie Giancola had called claiming that JF was "not in school" and that she requested a welfare check.

89. This statement was false. JF had been in school that day. He had arrived only a few minutes late and was marked present.

90. The officers spoke directly with JF. He confirmed he was in school and felt safe.

91. The officers also spoke with Angela, who was calm, cooperative, and sober.

92. The officers stated that nothing about Angela's presentation raised any concern and that JF was safe.

93. Police cleared the home, felt entirely comfortable with JF remaining in Angela's custody, and left peacefully. The matter should have ended there.

94. Around 8:00 p.m. that same night (November 28, 2022), the Attleboro Police again knocked on Angela's door — this time with DCF worker Kristie Giancola.

95. Ms. Giancola informed Angela that she was conducting an "emergency removal" and that JF was being taken to a foster home in Taunton.

96. Angela objected immediately.

97. There was no imminent danger

98. Police had just cleared the home hours earlier

99. JF had been in school.

100. Angela stated: "This is against the Fourth Amendment. You cannot take my son without a warrant." Angela told the officers and Giancola that there were no

exigent circumstances and that a warrant was legally required under both federal and Massachusetts law.

101. Angela further stated that a removal under these conditions constituted kidnapping, as there was no emergency, no risk of harm, and no judicial authorization.

102. Colin immediately called the Massachusetts State Police, reporting that DCF workers and individuals in unmarked vehicles were attempting to seize her son unlawfully.

103. The State Police contacted the Attleboro Police Department. Within minutes, the officers and Giancola left the premises, having no legal authority to seize JF.

104. At that moment, DCF's attempt at an "emergency removal" had failed — because it was unlawful.

105. After leaving Angela's home, Giancola went directly back to the Attleboro Police Department. There, she repeatedly pressured, badgered, and attempted to coerce officers into returning to Angela's home to remove JF.

106. She falsely suggested that Angela should be charged with "kidnapping," despite knowing. No warrant existed, No emergency existed, and JF was safe.

107. Angela was the legal custodial parent.

108. The police lieutenant informed Gianicola: "You and I both know that would never happen."

109. DCF then attempted to escalate the matter further, Contacting he Police Chief, the DCF Area Director Joseph Rucker. additional supervisory personnel

110. Even with this pressure, the police refused to participate in an unlawful removal.

111. Ms. Giancola and her supervisors knew they had no legal basis but were determined to retaliate because Angela had criticized her impairment and questioned her conduct.

112. The next morning, November 29, 2022, without new facts or any emergent situation. Giancola went to the juvenile court and filed a 29C emergency petition.

113. The affidavit contained multiple knowingly false statements. including. That JF "was not in school" "That Colin had returned to the home." "That Angela was drinking with JF in her care."

114. These fabrications were used to obtain temporary custody, despite No probable cause, No imminent danger. and No new evidence.

115. Police findings directly contradicting DCF's claims

116. The filing was retaliatory and unconstitutional.

117. Massachusetts law mandates a 72-hour hearing following emergency removal.

118. Angela's hearing did not conclude for over 880 hours, far beyond legal limit.

119. The hearing was split across three different sessions, without justification.

120. This delay violated, The Fourteenth Amendment, Massachusetts statutory law, Due process standards established everywhere in the U.S.

121. During this time, Angela and JF remained separated solely because of DCF's fabricated allegations.

122. Throughout the unlawful custody period, Angela was allowed only one hour per week of supervised visitation.

123. Visits occurred in an 8×8 room designed for toddlers, with baby toys — despite JF being fourteen years old.

124. DCF claimed Angela was "not in compliance," but this was based on

   A. A fabricated action plan
   B. A version that was never given to Angela
   C. DCF's own admitted mistake ("I must have sent you the wrong one")
   D. Despite Angela completing classes far beyond expectations, including Domestic Violence classes, AA attendance, Parenting classes, Alcohol awareness, and all recommended steps. DCF continued to punish her.

125. The revised action plan demanded that Angela enter an alcohol treatment facility, even though she had already been sober over 30 days, she would have to relapse to even qualify for entry, no evidence supported that she had a substance abuse disorder, this requirement was unreasonable, retaliatory, and designed solely to delay reunification.

126. Angela called to book an appointment for JF to receive counseling; she was denied as she was not his legal guardian at the time.

127. Ms. Parent called to also book an appointment for JF and was denied and told that DCF would have to book the appointment. DCF never booked an appointment for JF to receive any kind of counseling.

128. Ms. Parent notified DCF, they told Anne that DCF "would handle services."

129. DCF never provided any counseling for JF.

130. The lack of mental health services caused JF lasting emotional damage.

131. DCF promised JF a "Big Brother" mentor.

132. They never followed through. This was yet another service denied while Angela was blamed for "noncompliance."

133. DCF reassigned JF's case to Amareeka Durham.

134. Amareeka told Angela privately that she "did not agree with everything DCF does."

135. Amareeka further stated, "she believed Angela did not have JF yet specifically because of Krisitie Giancola and Paulina Baziles' retaliation."

136. Shortly thereafter, Amareeka left her position.

137. The case was then assigned to case worker Nicole Berry.

138. Angela repeatedly asked Attorney Tibbetts to file motions. specifically in care of Walt petiton in which she drafted personally and proposed to Mr. Tibbetts, as well as a motion to compel DCF compliance. He said he would — and never did.

139. Mr. Tibbetts also No-showed a court date.

140. Mr. Tibbetts ignored Angela's text messages.

141. Mr. Tibbetts refused to provide the court officer's report.

142. JF's attorney. Mrs. Doherty. likewise refused to advocate for counseling.

143. Failed to challenge unlawful visitation restrictions.

144. Failed to object to the lack of 72-hour compliance.

145. Accepted DCF's fabricated statements without investigation.

146. Angela filed a formal complaint with the Board of Bar Overseers. supervised by Mr. Fernandez. submitting over 32 pages of evidence. including Tibbetts' refusal to act.

147. Mr. Fernandez stated "That is Tibbetts' trial tactic."

148. Mr. Fernandez acknowledged the harm but refused to intervene. saying only:
**"If the court ever overturns the decision, then we can revisit it."**

149. Once the decision *was* overturned. the misconduct by Tibbetts had already caused permanent harm.

150. In **August 2025**, the Massachusetts Superior Court issued a ruling **vacating the entire neglect determination**, finding that the record did not support DCF's actions.

151. This judicial finding confirms that DCF's removal was unlawful. The allegations were unsubstantiated.

152. Due process was violated.

153. Angela's rights were infringed upon.

154. JF was illegally seized, kidnapped, and imprisoned, all against his constitutional rights.

155. The Superior Court's vacatur establishes that DCF's actions were **unconstitutional from the beginning**.

156. Angela suffered loss of custody, loss of familial integrity, emotional trauma, reputational harm, financial strain, and mental anguish.

157. JF suffered trauma from forced separation, nightmares and anxiety, feelings of abandonment, loss of stability, and psychological harm from DCF's actions.

158. Anne Parent suffered stress and emotional burden, loss of autonomy, disruption of her life, and anxiety caused by DCF's coercive conduct.

## FEDERAL COUNTS

## COUNT I- FOURTH AMENDMENT VIOLATION

**Unreasonable Seizure of a Child; Warrantless Removal 42 U.S.C. § 1983 — Against All Individual DCF Defendants**

159. Plaintiffs incorporate all preceding paragraphs as though fully stated herein.

160. The Fourth Amendment prohibits government officials from seizing a child from their parent without a warrant unless there is an immediate, objective, and a Articulable risk of serious physical harm.

161. Defendants removed — and attempted to remove — JF without a warrant, without exigent circumstances, and without probable cause.

162. Police and emergency responders had already determined JF was safe.

163. Angela was sober and cooperative, no emergency existed, no protective action was required.

164. Despite this, Defendants pursued an "emergency removal" based solely on retaliatory motives.

165. The fabricated 29C affidavit was used to create the illusion of danger where none existed.

166. Defendants violated clearly established law, including *Tenenbaum v. Williams* and First Circuit precedent, making immunity unavailable.

167. Defendants' conduct constituted an unreasonable seizure, actionable under §1983.

## COUNT II- FOURTEETH AMENDMENT VIOLATION

### Violation of the Right to Family Integrity 42 U.S.C. §1983 — Against All Individual Defendants

168. The substantive component of the Fourteenth Amendment guarantees families the fundamental right to live together free from arbitrary government interference.

169. Angela's and JF's familial integrity was violated when DCF seized JF without lawful cause, fabricated evidence, imposed punitive restrictions, delayed reunification, denied counseling and services, refused to correct known falsehoods.

170. This conduct shocks the conscience, the standard for substantive due process violations under *County of Sacramento v. Lewis*.

171. The removal and continued separation were arbitrary, retaliatory, and unconstitutional.

## COUNT III- FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS

### Delayed Hearing; Fabricated Evidence; Deprivation of Fair Process
### 42 U.S.C. §1983 — Against All Individual Defendants

172. Angela had a protected liberty interest in the custody of her child.

173. Massachusetts law requires a 72-hour hearing following emergency removal.

174. Defendants intentionally delayed Angela's hearing for 880 hours, depriving her of timely judicial review, the opportunity to challenge fabricated allegations, access to evidence, meaningful participation in the proceeding.

175. The delay violated procedural due process under the Fourteenth Amendment.

176. Defendants further violated due process by filing a knowingly false affidavit, withholding exculpatory information, misrepresenting school attendance and danger, denying Angela adequate visitation, obstructing her ability to obtain court documents.

178. The procedural violations directly caused the prolonged and unlawful separation.

## COUNT IV- FIRST AMENDMENT RETALIATION

### Right to Free Speech; Familial Association; Petitioning the Government
### 42 U.S.C. §1983 — Against All Individual Defendants

179. The First Amendment protects a citizen's right to criticize government employees.

180. Angela exercised protected speech when she told Defendant Giancola, "I find it hard to believe you're judging me on my parenting skills when you come to my house high as a kite."

181. Defendant Giancola and the DCF employees conspired and retaliated by attempting an unlawful seizure, alling police with false allegations, filing a fabricated 29C petition, seeking criminal charges, severely limiting visitation, creating punitive action plans, and delaying reunification.

182. These retaliatory acts violated clearly established First Amendment law.

183. But for Angela's protected speech, JF would not have been removed.

184. The First Amendment also protects the right of familial association, infringed by Defendants' retaliatory acts.

## COUNT V- 1983 CONSPIRACY

### 42 U.S.C. §1983 — Against DCF Defendants, Attorney Tibbetts, Attorney Doherty, and Mr. Fernandez

185. Defendants entered into an agreement — explicit or implicit — to deprive Plaintiffs' Ms. Bolton, JF, and Ms. Parent of their constitutional rights.

186. The conspiracy included fabricating the 29C affidavit, withholding evidence, misleading the court, failing to file necessary motions, aligning court-appointed attorneys with DCF's position, ratifying misconduct (BBO/ Mr. Fernandez), delaying hearings, and preventing counseling services.

Defendant Attorney David Tibbetts was the court-appointed attorney for Plaintiff Angela Bolton in the juvenile proceeding. Tibbetts acted under color of state law because he functioned as part of the state-run care-and-protection process, exercised state-delegated authority, and worked jointly with DCF personnel in the deprivation of constitutional rights. Tibbetts refused to file required motions, ignored Plaintiff's legal directives, failed to challenge fabricated evidence, did not request mandatory police reports, no-showed a court date, and participated in the delay of the legally required 72-hour hearing. His conduct contributed directly to the violation of Plaintiff's procedural and substantive due-process rights. He is sued in his individual capacity under 42 U.S.C. §1983 and under Massachusetts law for negligence, malpractice, and emotional distress.

Defendant Attorney Christine Doherty was the court-appointed attorney for minor Plaintiff JF. Doherty acted under color of state law by participating in the juvenile-court deprivation of JF's constitutional rights, failing to request mental-health services for JF, refusing to challenge false allegations, and ratifying DCF's unconstitutional restrictions on visitation and reunification. Doherty failed to advocate for JF's best interests, thereby contributing to the unlawful continuation of state custody. She is sued in her individual capacity under §1983 and Massachusetts law.

Defendant Attorney Carol Frisoli was the DCF senior attorney assigned to the Superior Court matter involving the DCF finding later vacated in August 2025. Frisoli acted under color of state law in representing DCF, ratifying fabricated evidence, endorsing unconstitutional actions, and advocating for continued custody despite lack of probable cause. Frisoli participated in the §1983 conspiracy by:
• supporting the knowingly false 29C affidavit,
• defending the unlawful removal despite contrary police findings,
• permitting fabricated and incomplete evidence to remain in court filings,
• failing to disclose exculpatory material, and
• obstructing timely reunification and due-process compliance.

Frisoli is sued in her individual and official capacities for §1983 violations, MCRA violations, negligence, and emotional-distress claims.

Defendant Attorney Jenna Fernandes was the DCF-affiliated attorney participating in or advising juvenile court litigation regarding JF's custody. This attorney acted jointly with DCF social workers in the filing, support, and judicial presentation of a fabricated 29C affidavit; failed to

correct known falsehoods: and supported the unconstitutional restrictions placed on Angela and JF.

Defendant Mr. Fernandez acted in an official capacity within the Massachusetts Board of Bar Overseers. Despite receiving extensive evidence (over 32 pages) of attorney misconduct. procedural violations, and constitutional deprivations, Fernandez intentionally refused to investigate or take corrective action, stating only, "that is Tibbetts' trial tactic." His failure to act constituted ratification of ongoing constitutional harm and contributed to the deprivation of Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments. Fernandez is sued in his individual capacity under §1983 and the Massachusetts Civil Rights Act.

187. Each defendant acted in concert for the shared purpose of keeping JF in state custody without lawful justification.

188. This conspiracy resulted in the constitutional violations described.

## COUNT VI- FAILURE TO INTERVENE

### 42 U.S.C. §1983 — Against Supervisory Defendants

189. Defendants had actual knowledge of the false statements, the retaliation, the unlawful removal attempt, the fabricated evidence, the over 880-hour delay of the hearing, and the lack of counseling.

190. These defendants had the power and duty to intervene.

191. They failed and refused to do so, making them liable for constitutional violations they permitted, endorsed, and ignored.

## COUNT VII- MONELL LIABILITY OFFICIAL CAPACITY CLAIMS

### Against DCF as an agency

192. DCF maintained policies, customs, and practices that caused the violations, including incentivizing unnecessary removals, tolerating fabricated evidence, failing to train workers on warrant requirements, failing to supervise caseworkers, maintaining a culture of retaliation, allowing excessive delays in hearings, failing to provide services to children in care.

193. These widespread practices were the moving force behind the constitutional injuries.

194. DCF is liable under *Monell v. Department of Social Services* for official-capacity claims.

## COUNT VIII- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**Against All Individual Defendants**

195. Defendants' actions were intentional, extreme, and outrageous. Their conduct exceeded all bounds of decency tolerated in a civilized society, including attempting to seize a child without legal basis, filing knowingly false accusations, retaliating for protected speech, imposing punitive visitation conditions, denying counseling, and causing prolonged separation. Plaintiffs' Angela, JF, and Anne.

## COUNT IX- NEGLIGENCE

**Against all individual Defendants and DCF**

196. Plaintiffs incorporate all prior paragraphs as though fully stated herein.

197. Defendants owed Plaintiffs a duty to exercise reasonable care in investigating allegations, assessing safety risks, filing accurate affidavits, supervising caseworkers, providing mandated services, making removal decisions, and interacting with kinship caregivers.

198. Defendants breached this duty by, fabricating allegations, failing to verify facts, misrepresenting material information, ignoring police findings, denying counseling, inflicting retaliatory restrictions, coercing Anne into foster placement, delaying hearings outside statutory limits.

199. The negligence of Defendants foreseeably and directly caused harm to Plaintiffs Angela, JF, and Anne.

## COUNT X- GROSS NEGLIGENCT

**Against all individual Defendants and DCF**

200. Defendants' conduct rose far beyond ordinary negligence and constituted gross negligence, including retaliatory abuse of state power, reckless disregard for basic constitutional and statutory requirements, knowingly filing false statements with the court, intentionally delaying hearings, ignoring a child's need for mental-health care, exploiting a kinship caregiver without due process.

201. Gross negligence makes Defendants liable under Massachusetts law.

## COUNT XI- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS of Plaintiffs Angela Bolton, JF, and Anne Parent.

202. Defendants engaged in extreme and outrageous conduct including attempting an unlawful removal, filing a knowingly false 29C affidavit, punishing Angela for protected speech, subjecting JF to months of emotional isolation, coercing Anne into a foster role under false pretenses, denying JF counseling, and imposing punitive visitation designed to cause distress.

203. Defendants intended to cause emotional distress and acted with reckless disregard for the likelihood of causing such distress.

204. As a direct and proximate result, all three Plaintiffs suffered severe emotional harm.

## COUNT XII- NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS of Plaintiffs Angela Bolton, JF, and Anne Parent

205. Defendants' negligent conduct foreseeably caused severe emotional distress to each of the Plaintiffs.

206. Angela suffered distress from losing her child, being falsely accused, and enduring retaliation.

207. JF suffered emotional trauma from the unexpected separation, lack of services, and instability.

208. Anne suffered emotional distress from sudden involuntary placement responsibilities and DCF manipulation.

## COUNT XIII- INTERFERENCE WITH FAMILIAL RELATIONS

### Against all individual Defendants

209. Massachusetts recognizes claims for interference with family relations when state actors intentionally or negligently disrupt lawful family relationships.

210. Defendants' actions interfered with Angela's parental rights, JF's right to live with his family, Anne's kinship relationship and her role as grandparent. Their acts were intentional, malicious, retaliatory, and without lawful justification.

## COUNT XIV- FALSE IMPRISONMENT OF A MINOR

211. JF was unlawfully seized and confined by DCF without a warrant, exigent circumstances,or lawful process.

212. DCF restricted his ability to return home, speak freely, attend counseling, or be with his custodial family.

213. These actions constitute false imprisonment under Massachusetts law.

## COUNT XV- VIOLATION OF MCRA

### Against all individual Defendants

214. Defendants interfered with Plaintiffs' secured rights by threats, intimidation, and coercion, including threatening to take JF without cause, filing false allegations to coerce compliance, pressuring police to arrest Angela, coercing Anne into accepting placement under duress, threatening consequences for not completing fabricated action plans.

215. The Plaintiffs' secured rights include parental rights, freedom from unlawful seizure, due process rights, freedom of speech, familial integrity, and freedom from false accusations.

216. Defendants are liable under the Massachusetts Civil Rights Act (MCRA).

## COUNT XVI- LOSS OF CONSORTIUM

### All Plaintiffs Angela Bolton, JF, and Anne Parent

217. Due to the Defendants' unlawful actions, JF and Angela were deprived of the companionship, comfort, guidance, and relationship of one another.

218. Because of Defendants' unlawful actions, Angela and her mother Anne Parent were deprived the companionship, comfort, guidance, and relationship of one another.

219. Loss of consortium of a parent or child is recognized under Massachusetts law.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiffs Angela Bolton, JF, and Anne Parent respectfully request that this Court enter judgment in their favor and award the following relief against all Defendants, jointly and severally, unless otherwise stated:

### Compensatory Damages

1. Award compensatory damages to Plaintiff Angela Bolton in an amount to be determined at trial for:
   a. Unlawful seizure of her child
   b. Emotional distress

    c. Loss of familial integrity
    d. Reputational harm
    e. Financial losses
    f. Psychological harm caused by fabricated allegations and prolonged separation

2. Award compensatory damages to Plaintiff JF, through his mother, in an amount to be determined at trial for:
    a. Traumatic separation from his mother
    b. False imprisonment
    c. Denial of counseling and mental-health services
    d. Emotional distress, nightmares, and anxiety
    e. Loss of stability and developmental harm

3. Award compensatory damages to Plaintiff Anne Parent in an amount to be determined at trial for:
    a. Emotional and psychological harm
    b. Loss of familial integrity
    c. Coercive kinship placement
    d. Denial of authority to seek essential services
    e. Interference with her rights as a grandparent and caregiver

**Punitive Damages**

4. Award punitive damages against all individual defendants, including:
    a. Kristie Giancola
    b. Paulina Bazile
    c. Melissa Davidson
    d. Darlene Tonucci
    e. Rosalie Kern
    f. Allison Pessoa
    g. Mary Cantin
    h. Joseph Rucker
    i. Attorney Tibbetts
    j. Attorney Doherty
    k. Mr. Fernandez
    l. Attorney Frisoli
    m. Attorney Jenna Fernandes
    n. All John Doe defendants

Due to their conduct was malicious, retaliatory, intentional, conscience-shocking, and in reckless disregard of Plaintiffs' federally protected rights.

Punitive damages are appropriate under 42 U.S.C. §1983 for individual-capacity claims.

**Declaratory Relief**

5. Declare that Defendants' actions violated the First. Fourth. and Fourteenth Amendments of the United States Constitution.
6. Declare that the emergency removal, the 880-hour delay, and the fabricated 29C affidavit were unconstitutional and void.
7. Declare that the Superior Court's vacatur conclusively establishes lack of probable cause or emergency circumstances.

**Injunctive Relief**

8. Issue permanent injunctive relief ordering DCF and its employees to:
   a. Cease retaliation against Angela and/or her family
   b. Correct all DCF records to accurately reflect the Superior Court's vacatur
   c. Remove any false findings, allegations, or statements from their internal databases
   d. Provide written confirmation of corrected records

**Equitable Relief**

9. Award equitable relief including:

   - Full correction of all DCF, state court, and agency records regarding Angela, JF, and Anne
   - Expungement of any neglect findings or allegations
   - Written acknowledgment that the removal lacked lawful basis
   - Notification to all third parties who received false information

**Attorney's Fees and Costs**

10. Award attorney's fees and litigation expenses under 42 U.S.C. §1988.

11. Award costs of suit.

**Other Relief**

13. Grant such other and further relief as this Court deems just, proper, and necessary to redress the constitutional injuries suffered by Plaintiffs.

**Prayer for Relief**

**WHEREFORE,** Plaintiffs request that judgment be entered in their favor and against all Defendants on all counts, awarding compensatory damages, punitive damages, declaratory judgments, injunctive relief, attorney's fees, costs, and all additional relief that justice requires.

## Jury Demand

Pursuant to Federal Rule of Civil Procedure. Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted this 1ˢᵗ day of December 2025.

*Angela Bolton*    Angela Y Bolton    12\1\2025

Angela Bolton (Pro se)

45 Birch Street # 11

Attleboro, MA 02703

774-360-7400

*Anne Parent*

Anne Parent

45 Birch Street #11

Attleboro, MA 02703

774-360-7400

*JF*

JF by and through his mother Angela Bolton

45 Birch Street #11

Attleboro. MA 02703

774-360-7400