UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 25-13537-RGS

ANGELA BOLTON, et al.

v.

DEPARTMENT OF CHILDREN AND FAMILIES, et al.

<u>MEMORANDUM AND ORDER</u>

May 15, 2025

STEARNS, D.J.

Angela Bolton and her mother Anne Parent ("Plaintiffs") who are representing themselves, bring this action arising from the removal of Bolton's minor son JF from her custody by the Commonwealth's Department of Children and Families ("DCF") on November 28, 2022. Bolton states that she is also bringing this action on behalf of JF. For the reasons set forth below, court will require Plaintiffs to file an amended complaint if they wish to proceed with this action.

## I.   JF Must Be Represented by Counsel

Federal law provides that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel." 28 U.S.C. § 1954. This statute "bar[s] a non-lawyer from representing anyone

but himself." *O'Diah v. Volkswagen of Am., Inc.*, 91 Fed. App'x 159, 160 (1st Cir. 2004). This means that, unless Bolton is a licensed attorney, she cannot represent JF. JF is a minor[1] and therefore needs a representative. *See* Fed. R. Civ. P. 17(c). But, even assuming that Bolton is a proper representative for JF in this case, a non-attorney parent must still be represented by counsel when bringing an action on behalf of their child, *see O'Diah*, 91 Fed. App'x at 160.

Accordingly, if Plaintiffs wish to proceed with this action, they must file a second amended complaint that does not include any claim asserted on behalf of JF or based on his injuries. Failure to do so within 35 days will likely result in dismissal of this action. If counsel appears for Plaintiffs and JF, the parties may file a second amended complaint with all of their claims.

## II.    Review of the Amended Complaint

Because the court granted Bolton's *in forma pauperis* motion, the court may review the pleading and dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary damages from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2). In addition, the court has discretion to *sua sponte*

---

[1] According to the amended complaint, JF was born on August 9, 2008. Amend. Compl. ¶ 33.

consider whether the Commonwealth has Eleventh Amendment immunity with regard to any of Plaintiffs' claims. *See Parella v. Ret. Bd. of Rhode Island Employees' Ret. Sys.*, 173 F.3d 46, 55 (1st Cir. 1999) (stating that "courts have the discretion to raise Eleventh Amendment questions sua sponte"). If Plaintiffs choose to file a second amended complaint, they must cure the deficiencies discussed below.

## A.    Plaintiff's Factual Allegations and Claims[2]

Plaintiffs bring claims under 42 U.S.C. § 1983 for violations of their rights under the First, Fourth, and Fourteenth Amendments and under Massachusetts law "arising from the constitutional seizure [of JF], retaliatory removal, fabrication of evidence, denial of due process, and interference with familial integrity perpetrated by [DCF], its employees, supervisors, attorneys, and related officials." Amend. Compl. ¶ 1.

According to Plaintiffs, on November 27, 2022, Bolton had an altercation with her boyfriend Colin Traver, which led to the arrest of the Traver. JF, who was fourteen at the time, witnessed the argument. Neither Bolton nor Traver were intoxicated.

---

[2] For purposes of this review, the court credits Plaintiff's well-pled allegations.

Bolton posted bail for Traver that same night. Emergency response workers from DCF spoke to Bolton at the police station, and stated that emergency response workers from DCF who had already been called to the station needed to view and speak with JF. The DCF workers followed Bolton and Traver back to Bolton's residence. The DCF workers spoke with and viewed JF, and they did not note any concerns with the safety of the home or JF. *Id.* The DCF workers informed Bolton that the "only requirement was that [Traver] leave the home for the night," which he did." ¶ 81.

The next day, Plaintiff spoke with "ongoing social worker" Kristie Giancola. During the call, Bolton stated that she "found it hard to believe that [Giancola] was judging her on parenting skills when [Giancola] comes to [Bolton]'s house high as a kite." *Id.* ¶ 4. Giancola "did not like this and hung up the phone." *Id.* In retaliation for that statement, Giancola called the Attleboro Police to perform a welfare check. Giancola lied to the police and told them that JF had not been at school. The police arrived at Bolton's residence and spoke with Bolton and JF, who told the officers that JF had indeed been at school, but he had been a couple minutes late. The police officer noted, "Mother was not intoxicated and felt safe leaving the child in care of his mother and cleared the scene." ¶ 5.

4

However, later that evening, Giancola and Attleboro police officers arrived at Bolton's home to do an emergency removal of JF. Bolton objected, stating JF could not be removed without a warrant because no exigent circumstances existed and that removal under the circumstances "constituted kidnapping." ¶ 101. Travel called the Massachusetts State Police, reporting "that DCF workers and individuals in unmarked vehicles were attempting to seize [JF] unlawfully." ¶ 102. The State Police contacted the Attleboro Police Department, and "within minutes" the Attleboro police and Giancola left the premises. ¶ 103.

Giancola went back to the police station and asked if Bolton would be charged with kidnapping. An officer responded, "[Y]ou and I both know that would never happen." ¶ 7. Not happy with this response, Giancola "badgered the lieutenant to get the chief on the phone with the [DCF] area director [Joseph Rucker]." *Id.* The police chief stated, "[N]o matter how long you stay here we will not be going back to the residence tonight." *Id.*

The next morning, Giancola "filed a false 29C affidavit, knowingly misrepresenting facts including school attendance, drinking, and the presence of Mr. Traver in the home," and JF was removed from his home. ¶ 10.

Bolton's "statutorily required 72-hour hearing" concerning the removal "was unlawfully delayed and not concluded more than 880 hours passed." ¶ 11. While JF was in the custody of DCF, Bolton and JF were granted one hour a week of visitation—which was supervised and in a small room. "At DCF's direction and under coercive conditions, Anne [Parent] became JF's 'kinship foster placement.'" Amend. Compl. ¶ 42. DCF allegedly "misrepresented requirements to Anne, prevented her from obtaining counseling for JF, forced her into compliance with foster mandates, and placed her under severe emotional and practical stress." ¶ 43. Both Plaintiffs tried to make appointments for JF to receive counseling services. DCF told the Plaintiffs that they could not book the appointments because they were not JF's legal guardians at the time. DCF said the agency would arrange services and even promised JF a "Big Brother" mentor, but never followed through with these representations.

Bolton "repeatedly asked" her court-appointed attorney David Tibbets "to file motions," including one "she drafted personally" and a motion "to compel DCF compliance." ¶ 138. Tibbets allegedly told Bolton he would file the motion, but "never did." *Id.* Tibbets also allegedly failed to appear for a court hearing and "ignored [Bolton]'s text messages." ¶ 140. Bolton filed a formal complaint concerning Tibbetts' alleged misconduct with

6

Massachusetts Board of Bar Overseers, including thirty-two pages of evidence.  In response to the complaint, attorney D'Andre Fernandez of the Board of Bar Overseers stated, "That is Tibbetts' trial tactic."   ¶ 147. Fernandez "refused to intervene, saying only: "If the court ever overturns the decision, then we can revisit it."  ¶ 148.

The amended complaint does not clearly state how long JF was in the custody of DCF.   At some point, DCF made a formal finding of neglect by Bolton.  Bolton sought judicial review of that finding, and, in August 2025, the Massachusetts Superior Court overturned that finding.

Plaintiffs name as defendants DCF, DCF Commissioner Linda Spears (sued "in her official capacity for injunctive and declaratory relief," ¶ 58, Giancola, Rucker, certain other DCF employees (Kristie Giancola, Paulina Bazile, Melissa Davidson, Darelene Tonucci, Rosalie Kern, Allison Pessoa, Mary Cantin, "John Does 1-10"), Tibbets, the court-appointed attorney for JF (Christine Doherty), Fernandez, "DCF-affiliated attorney" Jenna Fernandes, and attorney Carol Frisoli, who represented DCF in the Superior Court.

## B.    Standard of Review

Under the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled

to relief." Fed. R. Civ. P. 8(a). The "short and plain" statement of the claim must provide a defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 540, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

To "show that the [plaintiff] is entitled to relief," the complaint must "contain sufficient factual matter, accepted as true" to state a plausible claim for relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly,* 550 U.S. at 555). Similarly, "'naked assertion[s]' devoid of 'further factual enhancement'" do not suffice. *Id.* (quoting *Twombly,* 550 U.S. at 557). Further, the well-pleaded allegations must "sustain recovery under some actionable legal theory." *N.R. by & through S.R. v. Raytheon Co.*, 24 F.4th 740, 746 (1st Cir. 2022) (quoting *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008)).

8

## C.    Discussion

### 1.    DCF and DCF Commissioner Spears

Plaintiffs have failed to state a claim under § 1983 against DCF. Section 1983 allows a plaintiff to bring a claim against any "person" who, while acting "under color" of state law, violates the federal rights of the plaintiff. But the Supreme Court has held that a state, including its agencies and departments and officials acting in their official capacity, does not constitute a "person" subject to suit under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); *Segrain v. Duffy*, 118 F.4th 45, 72 n.16 (1st Cir. 2024). As an agency that is an arm of the Commonwealth of Massachusetts, DCF is not a "person" that may be sued under § 1983 for damages or injunctive relief.

Any claims under § 1983 against Commissioner Spears in her official capacity are only cognizable to the extent Plaintiffs seek prospective injunctive relief. *See Will*, 491 U.S. at 71 n.10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." (quoting *Kentucky v. Graham*, 473 U.S.

9

159, 167, n. 14 (1985) and citing *Ex parte Young*, 209 U.S. 123, 159–160 (1908))).

Any state law claims against DCF and Commissioner Spears are foreclosed by the Eleventh Amendment to the United State Constitution. The Eleventh Amendment affords states and their agencies immunity from suit in federal court, unless Congress has validly abrogated that immunity or the state has waived its immunity by consenting to suit. *See Virginia Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011) ("[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State.")[3]; *McKenna by & through McKenna v. Maine Dep't of Health & Hum. Servs.*, 152 F.4th 14, 18 (1st Cir. 2025).  Massachusetts did not waive its Eleventh Amendment immunity in passing the Massachusetts Tort Claims Act ("MTCA") or the Massachusetts Civil Rights Act.  *See Caisse v. DuBois*, 346 F.3d 213, 218 (1st Cir. 2003); *Isijola v. Grasso*, 768 F. Supp. 3d 166, 178 (D. Mass. 2025); *Irwin v. Comm'r of Dep't of Youth Servs.*, 388 Mass 810, 821 (Mass. 1983)).

---

[3] The sovereign immunity of a state is often referred to as "Eleventh Amendment immunity" because the Eleventh Amendment to the United States Constitution "confirm[ed] the structural understanding that States entered the Union with their sovereign immunity intact." *Va. Off. For Prot.*, 563. U.S. at 253.

## 2.    DCF Supervisors

Plaintiffs allege that Davidson "was employed by DCF in a supervisory decision-making capacity and contributed to and failed to correct the misconduct." Amend. Compl. ¶ 65. She was also allegedly "involved in the processing, review, or oversight of the removal and hearing procedures and contributed to the violations." *Id.* Tonucci "was involved in the processing, review, or oversight of the removal and hearing procedures and contributed to the violations." ¶ 66. Similarly, Plaintiffs allege that Kern "is a DCF employee who was involved in oversight, case review, or decision making, whose acts and omissions contributed to plaintiffs' injury," and who was "involved in the processing, review, or oversight of the removal and hearing procedures and contributed to the violations." ¶ 67. Pessoa allegedly "acted under color of law in reviewing, processing, and affirming actions related to the 29C filing, visitation restrictions, and reunification delays," and was "involved in the processing, review, or oversight of the removal and hearing procedures and contributed to the violations." ¶ 68. Plaintiffs' only allegation against Cantin is that she "is a DCF employee involved in supervising, authorizing, and ratifying the challenged conduct." ¶ 69.

### a.    § 1983 Claims

Plaintiffs' allegations against DCF Supervisors fail to state § 1983 claims.  "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable.'" *Velez-Rivera v. Agosto-Alicea*, 437 F.3d 146, 156 (1st Cir. 2006) (quoting *Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir. 2005)).  For a supervisor to be liable under § 1983 based on a constitutional violation committed by a subordinate, a plaintiff must show that the "supervisor's (in)action was affirmatively linked" to the unlawful action of the subordinate "in the sense that that it could be characterized as gross negligence amounting to deliberate indifference." *Justiniano v. Walker*, 986 F.3d 11, 20 (1st Cir. 2021) (internal quotation marks and alterations omitted).  Plaintiffs broad and vague allegations of wrongdoing of these supervisory defendants are essentially formulaic recitations of the elements of a cause of action and do not plausibly plead that they were directly involved in the violation of the constitutional rights of Plaintiffs.  Further, Plaintiffs' "umbrella" allegations in Count VI, in which Plaintiffs bring a claim under § 1983 all "Supervisory Defendants," do not cure this pleading deficiency.[4]

---

[4] In Count VI of the amended complaint, Plaintiffs bring a claim under § 1983 against "Supervisory Defendants," alleging that "Defendants had actual knowledge of the false statements, the retaliation, the unlawful removal

### b.    State Law Claims

Similarly, the broad and vague allegations against Davidson, Tonucci, Kern, Pessoa, and Cantin fail to state claims under state law.   In addition, a claim against the Commonwealth under the MTCA is the exclusive remedy for "injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment." M.G.L. ch. 258 § 2.  Thus, to the extent Plaintiffs bring claims against the DCF Supervisors (or any other employee of the Commonwealth) for injuries within the purview of the MTCA, the proper defendant for said claims is the Commonwealth.[5] However, as noted above, in passing the MTCA, the Commonwealth did not waive its Eleventh Amendment immunity and therefore cannot be required to litigate claims under the MTCA in this court.

---

attempt, the fabricated evidence, the over 880-hour delay of the hearing and the lack of counseling." Amend. Compl. ¶ 189.  Plaintiffs further allege that these defendants "had the power and duty to intervene" but "failed and refused to do so." ¶¶ 189-191.

[5]In addition, a civil action cannot be brought under the MTCA "unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose." M.G.L. ch. 258, § 4.

### 3.   Attorney Fernandez

Plaintiffs have failed to state a claim upon which relief may be granted against Board of Bar Overseer attorney Fernandez.  His decision not to take further administrative action on Bolton's complaints concerning her attorney's alleged misconduct does not plausibly plead that he directly participated in a violation of Plaintiffs' constitutional rights.  In addition, under the rules of the Commonwealth's Supreme Judicial Court, Fernandez has immunity with regard to any state law claims.  *See* S.J.C. Rule 4:01 § 9(3) ("The Board [of Bar Overseers], members of the Board and its staff, members of hearing committees, special hearing officers, and the bar counsel and members of his or her staff shall be immune from liability for any conduct in the course of their official duties.").

### 4.   Claims Concerning Parent

Plaintiffs' limited allegations concerning Parent fail to state a claim upon which relief may be granted.  Without more, allegations that DCF "coerced" Parent in to accepting the foster placement of JF or "misrepresented" the requirements of the placement do not permit the court to make a reasonable inference that the defendants are liable to her under a cognizable theory of relief.

14

## ORDER

In accordance with the foregoing, the court hereby orders:

If Plaintiffs wish to proceed with this action, they must file a second amended complaint that (1) does not include any claim asserted on behalf of JF or based on his injuries; and (2) cures the above-discussed pleading deficiencies.  Failure to do so within 35 days will likely result in dismissal of this action.  If counsel appears for Plaintiffs and JF, the parties may file a second amended complaint with all of their claims.

The second amended complaint will completely replace the amended complaint, and it will be subject to an initial screening pursuant to 28 U.S.C. § 1915(e)(2).  Summonses will not issue except upon order of the court.

**SO ORDERED.**

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

15